IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LUANN WHITE, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:25-00225-KD-N |
| ) | |
| PILOT CATASTROPHE SERVICES, ) | |
| INC., ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This action is before the Court on the Partial Motion to Dismiss filed by Defendant Pilot Catastrophe Services, Inc. ("Pilot") (Doc. 9).[1] Plaintiff Luann White, proceeding *pro se*, filed a response to the motion on October 1, 2025 (Doc. 14), and Pilot filed a reply on October 13, 2025 (Doc. 15). Upon due consideration, the undersigned **RECOMMENDS** that Defendant's partial motion to dismiss be **GRANTED in part and DENIED in part**, and that White be given an opportunity to file an amended complaint.

**I.    *Standard of Review***

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court must construe the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013).

---

[1] This motion was referred to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a).   See S.D. Ala. GenLR 72(b); (09/11/2025 electronic reference).

"Fed. R. Civ. P. 8(a)(2) requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010) (quotation omitted). "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 1289 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint's "'[f]actual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion to dismiss, a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). While this "plausibility standard is not akin to a 'probability requirement' at the pleading stage, … the standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Id.* (quoting *Twombly*, 550 U.S. at 556).

Moreover, "'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Id.* at 1290 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the plausibility standard, "where the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (citation modified). *Iqbal* "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Importantly, … courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (quoting *Iqbal*, 556 U.S. at 682 (quoting *Twombly,* 550 U.S. at 567)).

"[G]enerally, the existence of an affirmative defense will not support a rule 12(b)(6) motion to dismiss for failure to state a claim. A district court, however, may dismiss a complaint on a rule 12(b)(6) motion when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993) (quotation omitted).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation and quotations omitted). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an

3

otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quotation omitted).

When ruling on a Rule 12(b)(6) motion, "a judge generally may not consider materials outside of the four corners of a complaint without first converting the motion to dismiss into a motion for summary judgment." *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 808 (11th Cir. 2015) (citing *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005)). "However, a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

## II.  *Complaint and Motion to Dismiss*

As an initial note, the *pro se* complaint is not distinctively clear and is due to be amended. Defendant moves for *partial* dismissal under Rule 12(b)(6). According to the Complaint, Plaintiff Luann White worked for Defendant Pilot Catastrophe Services, Inc. ("Pilot") for approximately twenty years. (Doc. 1, PageID.2-3). She alleges that in 2023 her manager began assigning her responsibilities to a substantially younger, less-experienced employee, and that she was progressively excluded from meetings and job duties she had historically led. (*Id.*). She further alleges that she was treated differently than male colleagues with respect to remote-work opportunities and per diem eligibility, and that on March 24-25, 2024, she was demoted with a significant pay cut and given the option to accept the demotion or

4

leave. (*Id.*, PageID.3-4). Plaintiff's pleading consists of an unnumbered factual narrative followed by skeletal causes of action that largely recite elements with minimal supporting factual content. As drafted, it approaches the type of deficiency that often warrants *sua sponte* correction. However, it is not "virtually impossible" for the Court to discern the substance of Plaintiff's allegations and the claims she intends to assert. (*See* Doc. 1, PageID.2-4);[2] *Barmapov v. Amuial*, 986 F.3d 1321, 1329 (11th Cir. 2021) (Tjoflat, J., concurring).

Based on these allegations, White alleges four counts: Count I, sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; Count II, age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*; Count III, retaliation under Title VII, ADEA, and 42 U.S.C. § 1981; and Count IV, hostile work environment.

Pilot moves for partial dismissal of the Complaint: any claim under § 1981 for failure to state a claim; any claim pre-dating February 11, 2024, as untimely; hostile work environment claims for failure to exhaust administrative remedies and for failure to state a claim; and dismissal of Plaintiff's constructive discharge allegations for failure to state a claim. (*See generally* Doc. 9). Defendant asserts this would limit the Complaint to, "Count I: Sex Discrimination, would be limited to her allegations

---

[2] Plaintiff's Complaint attached an Equal Employment Opportunity Commission "Notice of Rights," which was dated February 27, 2025. (Doc. 1-1, PageID.6). The Complaint does not include the EEOC charge, however it was attached to Defendant's operative motion and Plaintiff's reply. (*See, e.g.,* Doc. 14-1, PageID.63). *See Maxcess, Inc.,* 433 F.3d at 1340 n. 3 ("However, a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.").

that she was treated differently regarding certain benefits (including remote work) and assignment compared [to] her male coworkers; Count II: Age Discrimination, would be limited to her alleged demotion and alleged attempts to replace her with a younger employee; and Count III: Retaliation would be limited to the alleged exclusion of Plaintiff from meetings and her purported demotion." (*Id.*, PageID.43-44).

### III. Analysis:

**A. 42 U.S.C. § 1981**

Defendant argues that any claim under 42 U.S.C. § 1981 should be dismissed, as "[n]owhere in her EEOC Charge or her Complaint does Plaintiff mention race or any complaints to Pilot about alleged race discrimination." (Doc. 9, PageID.35). In response, Plaintiff acknowledges that § 1981 is limited to race-based claims and requests leave to amend to clarify that her sex discrimination claim arises under Title VII and her age discrimination claim arises under the ADEA. (Doc. 14, PageID.58).

Section 1981 prohibits intentional discrimination in employment on the basis of race and also encompasses retaliation claims that arise from opposition to race discrimination. The Complaint references § 1981 in Count III and in the prayer for relief, but it contains no factual allegations suggesting race-based discrimination or retaliation for opposing race discrimination. (Doc. 1, PageID.4–5). Plaintiff's response likewise acknowledges that § 1981 is limited to race-based claims and requests leave to amend to clarify the statutory bases for her claims. (Doc. 14, PageID.58).

6

Accordingly, the undersigned **RECOMMENDS** that any 42 U.S.C. § 1981 claim be **DISMISSED** without prejudice for failure to state a claim.

### B. *Title VII and ADEA*

White asserts four counts arising primarily under Title VII and the ADEA: Counts I and II allege discrimination under the respective statutes; Count III alleges retaliation under Title VII and the ADEA and references § 1981; and Count IV alleges a hostile work environment under unspecified authority.

Defendant moves under Rule 12(b)(6) for dismissal, arguing *some* allegations under Title VII and the ADEA are untimely; Plaintiff lacks administrative exhaustion; and/or Plaintiff fails to state a claim. (Doc. 9, PageID.37; Doc. 15, PageID.69).

1. **Timeliness:**

Defendant seeks categorical dismissal of any claims premised on discrete acts occurring outside the 180-day charge-filing period.

To pursue a Title VII claim, a claimant must timely file a charge with the EEOC within 180 days of the allegedly unlawful employment practice in Alabama and then timely file suit within 90 days after receipt of the EEOC's notice of right to sue. *See* 42 U.S.C. § 2000e-5(e), (f); *Chapman v. W. Express, Inc.*, 2011 WL 780594, at *2 (S.D. Ala. Feb. 28, 2011). To pursue an ADEA claim, a claimant must timely file a charge and after the statutory waiting period, the claimant may file suit. *See* 29 U.S.C. § 626(d). If the EEOC dismisses the charge or otherwise terminates its

proceedings, suit must be filed within 90 days of receipt of the EEOC's notice of dismissal or termination. *See* 29 U.S.C. § 626(e); *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir. 2002); *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005); *Adams v. S. United Fire Ins. Co.*, 2008 WL 11394356, at *3 (S.D. Ala. Aug. 14, 2008) (citing 29 U.S.C. §§ 626(d)(1) and (e)). Here, Defendant's timeliness argument concerns the 180-day charge-filing window for discrete acts, not the 90-day period for filing suit.

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire may start the 180-day clock for discrimination claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." *Id.* "The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened." *Id.* at 117.

Here, White's pleading narrative and the EEOC charge attached to the motion identify March 2024 events, including an alleged demotion and an alleged March 25, 2024 termination, and also identifies earlier alleged conduct occurring in 2023 and January 2024. (*See* Doc. 9-1, PageID.47) ("The last time I experienced and complained about this disparity was on or around March 22, 2024. That following Sunday the 24th I received an email from management demoting me from an office to a cubicle. The following day (March 25th) I expressed that I felt I was being retaliated against.

8

That same day, I was abruptly terminated.").[3] Defendant argues that Plaintiff may not recover for discrete discriminatory or retaliatory acts occurring before February 11, 2024 (i.e., more than 180 days before the August 2024 EEOC charge). (Doc. 9, PageID.36-38). At the pleading stage, dismissal on timeliness grounds is appropriate only when the time bar clearly appears on the face of the complaint. *See Fortner*, 983 F.2d at 1028 (A district court, however, may dismiss a complaint on a rule 12(b)(6) motion "when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." (citation omitted)).

Though *Morgan* precludes recovery for discrete acts occurring outside the charge-filing period, those acts may be used as background evidence in support of timely claims. 536 U.S. at 105, 113. Additionally, as to hostile environment claims, "[i]t does not matter, for the purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* at 117.

Here, the pleadings allege at least one timely adverse employment action. Moreover, Pilot does not identify any specific count that is based exclusively on time-barred discrete acts, instead seeking categorical dismissal on timeliness grounds. Accordingly, at the Rule 12(b)(6) stage, timeliness affects which discrete acts may be independently actionable, but categorical dismissal is unwarranted. *See Morgan*, 536 U.S. at 105, 113.

---

[3] Because Plaintiff's EEOC charge is central to the claim and Defendant's timeliness/exhaustion arguments, and its authenticity is not disputed, the Court may consider the charge (Doc. 9-1) on a Rule 12(b)(6) motion without converting the motion into one for summary judgment. *See supra* n.2.

**2. Administrative Exhaustion:**

Before filing a Title VII action, "a plaintiff must file a charge of discrimination with the EEOC." *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (citing *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004)). The Eleventh Circuit has explained:

> The facts alleged in the charge matter most for determining what can reasonably be expected to grow out of an EEOC charge; the legal theory the charging party articulates is far less important. *See id.; Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) ("In the context of a statute like Title VII it is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations."). We do not strictly construe EEOC charges, and we are reluctant to allow procedural technicalities to bar Title VII claims. *Gregory*, 355 F.3d at 1280.

*Patterson*, 38 F.4th at 1345.

Defendant argues that White's "hostile work environment" claim should be dismissed as it was not part of the EEOC charge. (*See* Doc. 9, PageID.37-40) ("Plaintiff did not allege any claims demonstrating that she was subjected to a hostile work environment when she filed her EEOC charge."). The proper inquiry is whether the judicial claim is "like or related to, or grew out of," the allegations in the EEOC charge. *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (citation omitted).

Here, Plaintiff checked boxes for sex and age discrimination and for continuing action, and her narrative describes ongoing workplace treatment, including being

spoken about negatively, being berated by management, and culminating in a demotion and termination after she complained about disparate treatment. (Doc. 9-1, PageID.46-47). While the charge does not label "hostile work environment" claims, construed liberally, those allegations could reasonably be expected to prompt an EEOC investigation into the alleged discriminatory and retaliatory treatment described in the charge, including whether the facts asserted supported any harassment-based theory. Accordingly, Defendant has not established lack of exhaustion on the face of the pleadings. *See Patterson*, 38 F.4th at 1345 (discussing "liberal EEOC charge strictures"); *see also Brown v. Mobile Cnty. Comm'rs*, 2015 WL 1444965, at *4 (S.D. Ala. Mar. 30, 2015) (examining a complaint for "general discrimination that could be construed as encompassing her … hostile work environment claims").

Defendant also suggests that Plaintiff's representation by counsel during the EEOC proceedings warrants a more exacting exhaustion analysis. The Eleventh Circuit's scope-of-charge inquiry, however, turns on whether the judicial claim is "like or related to, or grew out of," the allegations in the charge, not on whether the charging party had counsel. *See id.* at 1345 (reiterating the liberal EEOC charge strictures); *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).

Accordingly, while White must still allege facts that plausibly state a hostile-work-environment claim under Rule 8, exhaustion requirements do not provide grounds for dismissal.

11

### *C. Failure to State a Claim*

Defendant argues that Plaintiff has failed to state a claim for hostile work environment (Count IV) and that the Complaint does not plead facts sufficient to support a constructive discharge theory of adverse employment action (Count III). (Doc. 9, PageID.40-43). White's unnumbered statement of facts provides:

> Plaintiff was progressively excluded from meetings and job duties she had historically led. When she raised concerns with HR and management, she was ignored or told she was "being sensitive."
>
> Despite never having any performance issues, Plaintiff was demoted on March 25, 2024, to an entry-level adjuster position that she once trained others for, accompanied by a significant pay cut. She was given the option to accept the demotion or leave.
>
> Plaintiff was constructively discharged due to the retaliatory and discriminatory environment created by management

White's Counts III and IV then state:

> COUNT III – RETALIATION – Title VII, ADEA, Section 1981
> Plaintiff engaged in protected activity by complaining to management and HR about discrimination.
>
> Defendant retaliated against Plaintiff by stripping her responsibilities, excluding her from meetings, and ultimately demoting and constructively discharging her.
>
> COUNT IV – HOSTILE WORK ENVIRONMENT
> Defendant's conduct created a hostile, offensive, and intimidating work environment based on Plaintiff's sex, age, and protected activity.
>
> The environment was so severe and pervasive that it altered the conditions of Plaintiff's employment and resulted in her constructive discharge.

(Doc. 1, PageID.3-4).

1. **Retaliation (Count III)**

To state a claim for retaliation, plaintiffs must show "(1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1345 (11th Cir. 2022) (citation omitted).

To the extent Count III is intended to allege retaliatory harassment, the governing question is whether the alleged conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotes omitted) (citation omitted); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861–63 (11th Cir. 2020).

> Although Title VII protects against forms of retaliation that produce an objective injury or harm, like a reduction in pay, benefits, or responsibilities that would demonstrate an adverse effect, it does not protect against "normal[ ] petty slights, minor annoyances, and simple lack of good manners." [*Burlington*] at 67–68, 126 S.Ct. 2405.
> …
> One way the plaintiff can establish that the adverse action and protected activity were not "wholly unrelated" is by showing a close temporal proximity between the employer's discovery of the protected activity and the adverse action. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). The temporal proximity must be "very close." *Id.* (quotation omitted).
> …
> Yet, if the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected. *Cotton v. Cracker Barrel Old Country Store, Inc.,* 434 F.3d 1227, 1233 (11th Cir. 2006) (holding that no causal link existed between the alleged retaliatory conduct and the plaintiff's complaint of harassment where the decision to decrease her post-holiday work hours had been made and conveyed to her when she was hired); *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that there was no causal link because the employer contemplated demoting the plaintiff

13

months before he complained that the employer was interfering with his rights under the Family and Medical Leave Act).

*Debe v. State Farm Mut. Auto. Ins. Co.*, 860 F. App'x 637, 640 (11th Cir. 2021).

White alleges, in part, that after complaining to management about discrimination, she was constructively discharged. Constructive discharge is a distinct adverse action that applies when the employee is forced to resign.[4] A constructive-discharge claim requires allegations that working conditions were so objectively intolerable any reasonable person would have felt compelled to resign. *See Beltrami v. Special Couns., Inc.*, 170 F. App'x 61, 62 (11th Cir. 2006).

> The threshold "is quite high." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir.2001) (holding that being berated in public was not sufficient to show constructive discharge). *Compare Fitz*, 348 F.3d at 977–78 (being reprimanded and hearing from coworkers of management's intent to fire were insufficient to show constructive discharge) and *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir.2001) (receiving poor evaluations was not sufficient to establish constructive discharge) with *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1015 (11th Cir.1994) (holding court's finding of constructive discharge was supported by evidence of plaintiff being placed on probation, receiving unjustified work evaluations, and being repeatedly screamed at so that supervisor's "spit was flying in [plaintiff's] face") and *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 552 (11th Cir.1997) (holding that summary judgment for defendants was inappropriate where plaintiff was relieved of all responsibilities and was given a chair with no desk, and other employees were instructed not to speak to her).

*Id.*, 170 F. App'x at 62-63.

---

[4] The Complaint alleges that Plaintiff was demoted with a significant pay cut and "given the option to accept the demotion or leave." (Doc. 1, PageID.3). By contrast, the EEOC charge alleges that Plaintiff was "abruptly terminated" on March 25, 2024. (Doc. 9-1, PageID.47). The Court need not resolve the conflict at this stage of litigation.

Here, the complaint does not allege facts supporting objectively intolerable conditions meeting the standard of constructive discharge. However, constructive discharge is not a standalone cause of action, and White, as previously noted, can rely on other allegations to support a claim for retaliation. *See Walsh v. City of Ocala*, 2019 WL 4395297, at *7 (M.D. Fla. June 17, 2019), *report and recommendation adopted*, 2019 WL 3297248 (M.D. Fla. July 23, 2019) ("the Court is unaware of, and the parties have not offered, any authority suggesting that constructive discharge is a separate cause of action under federal law"). Allegations of "complaining to management and HR about discrimination" and then days later being stripped of responsibilities, excluded from certain work activities, and demoted to a lesser position, give rise to a plausible inference of retaliation. (*See* 9-1; PageID.47).

In sum, the Complaint does not plead facts sufficient to support a constructive-discharge theory, but it plausibly alleges retaliation based on other materially adverse actions. Accordingly, Count III should remain.

    **2.**    **Hostile Work Environment (Count IV)**

Count IV brings a claim for hostile work environment. A hostile work environment claim, based on sex or age, requires allegations that the workplace was "permeated with discriminatory intimidation, ridicule, and insult" that is sufficiently severe or pervasive to alter the conditions of employment. *MackMuhammad v. Cagle's Inc.*, 379 F. App'x 801, 804-05 (11th Cir. 2010) (quoting *Miller v. Kenworth of Dothan*, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)). "In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the

conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller,* 277 F.3d at 1276 (citation omitted).

As pleaded, Count IV consists primarily of conclusory statements that Defendant's conduct created a "hostile, offensive, and intimidating" environment that was "severe and pervasive," without factual allegations describing specific harassing acts, their frequency, or their severity, or otherwise permitting a plausible inference that any alleged hostility was because of Plaintiff's sex or age. (Doc. 1, PageID.4-5).

The Complaint fails to allege facts showing that the workplace was "permeated with discriminatory intimidation, ridicule, and insult" that was sufficient to alter the conditions of employment. *See MackMuhammad*, 379 F. App'x at 804-05. Accordingly, the undersigned **RECOMMENDS** that Count IV be **DISMISSED** without prejudice for failure to state a claim.

**D. Leave to Amend**

Notably, Rule 8(a) does not demand "detailed factual allegations," but it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007). In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

"Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2)." *McConnell v. Univ. of Alabama Healthcare Sys.*, 2016 WL 4132260, at *2 (S.D. Ala.

16

Aug. 3, 2016). White fails to sufficiently put forward well-pleaded, nonconclusory factual allegations to state a hostile work environment claim, nor is a theory of constructive discharge supported. *See Iqbal*, 556 U.S. at 680; *see also Campbell,* 760 F.3d at 1168-69 ("Yet even in the case of pro se litigants this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.").

The Court previously advised White that she could amend her pleading as a matter of course within the time permitted by Rule 15(a)(1). (Doc. 12). She now requests leave to amend. (Doc. 14, PageID.60). Where a more carefully drafted complaint might state a claim, an uncounseled plaintiff should generally be afforded at least one opportunity to amend before dismissal with prejudice. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (overruling Bank as to counseled parties).

As such, the undersigned **RECOMMENDS** that Defendant's motion be **GRANTED** in part as to § 1981 and Count IV (hostile work environment) without prejudice, and that White be allowed to file an amended complaint.[5] Defendant's Motion should otherwise be **DENIED**.

---

[5] The amended complaint, if filed, must reproduce the entire complaint "as amended and may not incorporate any prior pleading by reference[,]" S.D. Ala. CivLR 15(a), and it will become the operative complaint in this action.

17

## CONCLUSION

Accordingly, it is **RECOMMENDED** that Defendant's Partial Motion to Dismiss (Doc. 9) be **GRANTED** in part and **DENIED** in part as follows:

- That any claim under 42 U.S.C. § 1981 be **DISMISSED** without prejudice;

- That Count IV (Hostile Work Environment) be **DISMISSED** without prejudice for failure to state a claim; and

- That Defendant's Motion be otherwise **DENIED**.

It is further **RECOMMENDED** that Plaintiff be **GRANTED** leave to file an amended complaint consistent with the findings above.

## NOTICE TO *PRO SE* PLAINTIFF

The Plaintiff is advised that "[a]ll persons proceeding *pro se* shall be bound by, and must comply with, all Local Rules of this Court, as well as the Federal Rules of Civil … Procedure, unless excused by Court order." S.D. Ala. GenLR 83.5(a). S*ee also Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("[O]nce a *pro se* IFP litigant is in court, he is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure. These rules provide for sanctions for misconduct and for failure to comply with court orders."); *United States v. Hung Thien Ly*, 646 F.3d 1307, 1315 (11th Cir. 2011) ("A *pro se* [party] must follow the rules of procedure and evidence and the district court has no duty to act as his lawyer…" (citation omitted)).

For instance, Federal Rule of Civil Procedure 11(a) requires that any paper filed with the Court be signed by a *pro se* party personally and provide that party's "address, e-mail address, and telephone number." *See also* S.D. Ala. GenLR 5(a)(4) ("For filings by *pro se* litigants, the unrepresented party shall personally sign each document filed and shall include, directly beneath the signature line, his or her name, address and telephone number."). Unless and until the Plaintiff registers with the Clerk of Court to electronically file with the Court, *see* Administrative Procedure for Electronic Filing in the United States District Court for the Southern District of Alabama, § III(B) (last revised 2/1/2019) (https://www.alsd.uscourts.gov/sites/alsd/files/AdminPro.pdf); Fed. R. Civ. P. 5(d)(3),

the Plaintiff must <u>handwrite</u> their signature in order to satisfy Rule 11(a).[6] "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." Fed. R. Civ. P. 11(a). Repeated failures to follow this or any other court rule or order may result in additional sanctions, up to and including dismissal of this action. *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005) (explaining that a court may dismiss an action on its own motion as a sanction for failure to obey rules and orders, under both Federal Rule of Civil Procedure 41(b) and the court's inherent authority); *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989) ("While dismissal is an extraordinary remedy, dismissal upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.").

Under this Court's local rules, "[a]ny person proceeding *pro se* must, at all times during the pendency of the action to which he or she is a party, keep the Clerk informed of his or her current address and … must promptly notify the Clerk of any change of address … Failure to comply with this Rule may result in sanction, including dismissal of a *pro se* plaintiff's action…" S.D. Ala. GenLR 83.5(b). Additionally, any "request for Court action must be presented by motion and may not be presented by informal means such as a letter." S.D. Ala. GenLR 7.[7]

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing

---

[6] *See Becker v. Montgomery*, 532 U.S. 757, 763–64, 121 S. Ct. 1801, 149 L. Ed. 2d 983 (2001) ("Becker maintains that typing one's name satisfies the signature requirement and that his original notice of appeal, containing his name typed above "(Counsel of Record)," met Civil Rule 11(a)'s instruction…[H]owever, we are not disposed to extend the meaning of the word 'signed,' as that word appears in Civil Rule 11(a), to permit typed names. As Rule 11(a) is now framed, we read the requirement of a signature to indicate, as a signature requirement commonly does, and as it did in John Hancock's day, a name handwritten (or a mark handplaced).").

[7] The Court's Local Rules and standing orders can be accessed at: https://www.alsd.uscourts.gov/court-info/local-rules-and-orders

to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 12th Day of January, 2026.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**